UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
GIOVANNI CAICEROS,                                :
                                                  :
                              Plaintiff,          :
                                                  :         REPORT AND
        -against-                                 :         RECOMMENDATION
                                                  :
SDH SERVICES WEST, LLC,                           :         24-CV-7606 (LDH)(MMH)
                                                  :
                              Defendant.          :
------------------------------------------------------------------ x

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiff Giovanni Caiceros sued Defendant SDH Services West, LLC ("SDH"), alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") for unpaid overtime wages, withheld wages, and retaliatory and discriminatory termination. (*See generally* Compl., ECF No. 1.)[1] Before this Court is SDH's motion to compel arbitration and stay the action pending arbitration proceedings. (*See generally* Mot., ECF No. 9.) The Honorable LaShann DeArcy Hall referred the motion for report and recommendation. For the reasons below, the Court respectfully recommends that the motion to compel arbitration should be **granted** and that this action should be stayed pending arbitration.

**I.    BACKGROUND**

    **A.    Factual Allegations**

SDH is a New York limited liability company with its principal place of business at the John F. Kennedy International Airport ("JFK") in Queens County, New York. (Compl., ECF

---

[1] All citations to documents filed on ECF are to the ECF document number (i.e., "ECF No. ___") and pagination "___ of ___" in the ECF header unless otherwise noted.

1

No. 1 ¶ 11.) SDH is a subsidiary of Sodexo, Inc. and operates restaurants and food outlets at JFK. (*Id.* ¶ 13; *see also* Sanders Decl. Ex. A, ECF No. 10-1 at 2.)

From February 2023 to September 13, 2024, SDH employed Caiceros as a manual worker, whose duties included setting up outlets, cleaning up, loading/unloading, packing, unpacking, moving, and serving food. (Compl., ECF No. 1 ¶¶ 15–16.) Caiceros typically worked at least 50 to 55 hours each week and five to seven days per week. (*Id.* ¶ 18.) Caiceros's last hourly pay rate was about $56.67. (*Id.* ¶ 17.) Caiceros alleges that SDH did not pay him an overtime premium for hours worked above 40 each week during his employment. (*Id.* ¶ 19.) He further claims that SDH paid him bi-weekly instead of weekly and did not issue wage notices and wage statements. (*Id.* ¶¶ 22, 25–26.) Caiceros also alleges that in 2023, he complained to his supervisor's boss that his supervisor did not allow him to use his paid time off; thereafter, his supervisor was very upset and their relationship deteriorated. (*Id.* ¶ 59.) Only a few months later, Caiceros's supervisor asked him to look for other work and Caiceros was terminated on or about September 13, 2024. (*Id.*) He claims that his termination was in retaliation for objecting to his supervisor's decision not to let him use his paid time off. (*Id.*)

**B.    Arbitration Provisions**

On January 9, 2023, Caiceros received an offer letter from Sodexo (the "Offer Letter") for a position as General Manager, Aviation Lounge I, with an effective date of January 14, 2023. (Sanders Decl., ECF No. 10 ¶ 6; *id.* Ex. B, ECF No. 10-2 at 3–5.) The Offer Letter included a Terms of Employment Statement ("Terms Statement"), which provided information about Plaintiff's pay, benefits, and required actions before employment. (Sanders Decl. Ex. B, ECF No. 10-2 at 3–5.) The Terms Statement's "Arbitration Agreement" section states:

2

> As a condition of your employment, you are also required to sign and comply with an Employment Arbitration Agreement. The Agreement and Frequently Asked Questions (FAQs) are available on Sodexo's Employee On-Boarding Portal. Please review this information carefully, as the program affects the legal rights of both you and the Company (including a waiver of the right to bring a civil action in federal or state court before a civil judge or jury, as well as a waiver of the right to bring or participate in a class action, collective action or representative action). Please note that we must receive your signed Agreement before your first day of employment.

(*Id.* at 3.)

The Mutual Agreement to Arbitrate Claims (the "Arbitration Agreement") was one of the new-hire documents referenced in the Offer Letter. (Sanders Decl., ECF No. 10 ¶ 8.) The first sentence of the Arbitration Agreement states the following:

> I recognize that disputes may arise between me and Sodexo, Inc. or any parent, subsidiary or affiliate of Sodexo, Inc. (collectively, "Sodexo") during or following my employment with Sodexo, and that those differences may or may not be related to my employment.

(Sanders Decl. Ex. C, ECF No. 10-3 at 2.) In a section entitled "Claims Covered by the Agreement," the Arbitration Agreement provides, in relevant part:

> Sodexo and I mutually consent to the resolution by arbitration all claims or controversies ("claims"), past, present or future, whether or not arising out of my employment (or its termination), that Sodexo may have against me or that I may have against any of the following: (1) Sodexo, (2) its officers, directors, employees or agents in their capacity as such or otherwise, (3) Sodexo's parents, subsidiaries and affiliated entities, (4) Sodexo's benefit plans or the plans' sponsors . . . and/or (6) all successors and assigns of any of them.
>
> The only claims that are arbitrable are those that are justiciable under applicable federal, state, or local law. Arbitrable claims include, but are not limited to: claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for retaliation or discrimination (including, but not limited to, race, national origin, religion, sex, sexual orientation, gender identity, marital status, age, physical or mental disability or handicap, or medical condition); claims for benefits (except as provided below); and claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance (except as provided below).

(*Id.*)² As part of his employment offer, Caiceros was required to review and sign the Arbitration Agreement before his first day of employment. (Sanders Decl., Ex. B, ECF No. 10-2 at 3.)

To complete the onboarding process, Caiceros was required to create his own personal profile on Sodexo's Career Center website portal (the "Portal") by entering his name and personal email address, and then creating a unique username and password, which he could thereafter use to access the Portal. (Sanders Decl., ECF No. 10 ¶ 7.) After accessing the Portal, Caiceros was presented with new-hire materials to complete and/or electronically sign, including a link to the Arbitration Agreement. (*Id.* ¶ 8.) Below the link, was the statement: "Once you review, please click the 'Add My Signature' button. By clicking the button below, you are applying your electronic signature." (*Id.* ¶ 9.) Upon clicking the link entitled "Mutual Agreement to Arbitrate Claims," the Arbitration Agreement was viewable in a separate tab. (*Id.* ¶ 8.) Sodexo's electronic applicant tracking system automatically creates a record memorializing the date and time the employee clicked the "Add My Signature" button and electronically agreed to the new-hire documents, including the Arbitration Agreement. (*Id.* ¶ 9.)

Caiceros electronically signed the Offer Letter on January 9, 2023 at 12:37 p.m., immediately below the following statement: "I have read and accept this employment offer and the Terms of Employment Statement." (Sanders Decl. Ex. B, ECF No. 10-2 at 5.) Less

---

² Excluded from the Arbitration Agreement are workers' compensation or unemployment benefits claims, non-preempted claims that are not subject to arbitration, claims under the Franken Amendment (related to defense contracts), and claims under an employee benefit or pension plan. (*See* Sanders Decl. Ex. C, ECF No. 10-3 at 2–3.)

than two hours later, he electronically agreed to the Arbitration Agreement on January 9, 2023 at 1:57 p.m. (Sanders Decl., ECF No. 10 ¶ 10; *id*. Ex. D, ECF No. 10-4 at 2.)

### C. Procedural History

On October 30, 2024, Caiceros commenced this action, alleging violations of the FLSA and NYLL for unpaid overtime wages, withheld wages, and retaliatory and discriminatory termination. (*See generally* Compl., ECF No. 1.) SDH filed the instant motion on December 23, 2024. (*See* Mot., ECF No. 9.) Four days later, Caiceros requested mediation, arguing that the Arbitration Agreement does not contain his signature and seeking discovery and a trial. (*See* Mot. to Request Mediation, ECF No. 13 at 2.) SDH opposed any mediation. (*See Generally* Def. Ltr., ECF No. 14.) The Court denied Caiceros's request for referral to mediation. (Jan. 29, 2025 Order.) On March 4, 2025, Judge DeArcy Hall referred SDH's motion for report and recommendation.

## II. LEGAL STANDARDS

Pursuant to the Federal Arbitration Act ("FAA"), a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A party may move for an order compelling arbitration, and the court must grant the motion "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." *Id.* § 4; *Arnaud v. Doctor's Assocs. Inc.*, No. 18-CV-3703 (NGG)(SJB), 2019 WL 4279268, at *3 (E.D.N.Y. Sept. 10, 2019) (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 354–55 (2011)); *aff'd*, 821 F. App'x 54 (2d Cir. 2020).

"[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co. v. Int'l Bhd. of Teamsters*,

5

561 U.S. 287, 297 (2010) (emphasis in original) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) and *AT&T Mobility*, 563 U.S. at 648–49); *see also Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 834 (2d Cir. 2021) ("[T]he FAA is not a substitute for contractual assent, and we will not enforce arbitration unless and until it is determined that an agreement exists."). Therefore, when considering a motion to compel arbitration, the court must determine: (1) whether the parties agreed to arbitrate and (2) if so, the scope of that agreement. *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (cleaned up).

"The party seeking to compel arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made . . . . This burden does not require the moving party to show that the agreement would be enforceable—only that an agreement to arbitrate existed." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101–02 (2d Cir. 2022) (citing *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 251, 254 (2d Cir. 2019)). "Once the existence of an agreement to arbitrate is established, the burden shifts to the party seeking to avoid arbitration to 'show[ ] the agreement to be inapplicable or invalid.'" *Id.* (quoting *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010)). "Ordinary principles of contract law guide the inquiry into whether an arbitration agreement was validly formed and whether the parties consented to arbitrate a particular dispute." *Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 113 (2d Cir. 2023) (citing *Granite Rock*, 561 U.S. at 296).

"In the context of motions to compel arbitration brought under [section 4 of the FAA], the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003). "The summary judgment standard

6

requires a court to 'consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002)). "In doing so, the court must draw all reasonable inferences in favor of the non-moving party." *Nicosia*, 834 F.3d at 229.

## III. DISCUSSION

As set forth below, while the Court finds that an agreement to arbitrate exists, several questions regarding its enforceability should be resolved by the arbitrator pursuant to the agreement's terms.

### A. FAA's Applicability

The Court first addresses Caiceros's argument that the FAA does not apply to the Arbitration Agreement. *Marino v. CVS Health*, 698 F. Supp. 3d 689, 696 (S.D.N.Y. 2023) ("Before a court can 'invoke its statutory powers under [Sections] 3 and 4 [of the FAA] to stay litigation and compel arbitration according to a contract's terms, [it] must first know whether the contract itself falls within or beyond the bounds of [Sections] 1 and 2 [of the FAA].'") (quoting *New Prime Inc. v. Oliveira*, 586 U.S. 105, 111 (2019)).

Section 2 of the FAA makes enforceable a written arbitration provision in "a contract evidencing a transaction involving commerce," 9 U.S.C. § 2, while Section 1 excludes from the FAA "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce," *id.* § 1. Caiceros argues that SDH does not establish that he was engaged in "interstate commerce" as required under the FAA (but does not claim that the Arbitration Agreement is exempt from the FAA under Section 1). (Pl.

7

Mem., ECF No. 17 at 18–20.) This argument fails. "The commerce requirement is interpreted 'broadly, extending the [FAA's] reach to the limits of Congress' Commerce Clause power' and encompassing activities that generally 'affect' or 'involve' commerce." *Simeon v. Domino's Pizza LLC*, No. 17-CV-5550 (RJD)(ST), 2019 WL 7882143, at *3 (E.D.N.Y. Feb. 6, 2019) (quoting *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 268 (1995)); *see also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001) (FAA applies to all employment contracts unless exempt under Section 1).

The record sufficiently establishes that Caiceros's activities were "involving commerce" within the meaning of the FAA. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56–57 (2003) ("Congress' Commerce Clause power may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice . . . subject to federal control.") (cleaned up). As alleged, Caiceros was "a manual worker at Defendant's restaurants and food outlets performing a variety of physical duties such as setting up outlets, cleaning up, loading/unloading, packing, unpacking, moving, and serving food" at JFK. (Compl., ECF No. 1 ¶¶ 13, 16.) "The Arbitration Agreement falls within the FAA's commerce requirement because it relates to a general practice involving or affecting commerce—the preparation [] of meals to individuals in exchange for payment" and "a business that uses materials and ingredients involved in interstate commerce." *Simeon*, 2019 WL 7882143, at *3 (cleaned up) (citing *Citizens Bank*, 539 U.S. at 57 and *Allied-Bruce*, 513 U.S. at 282). As noted, Caiceros does not (and cannot) allege that he is a transportation worker subject to the Section 1 exclusion. Therefore, the FAA governs the Arbitration Agreement.

### B. Agreement to Arbitrate

#### 1. *Prima Facie* Case

"Whether an agreement to arbitrate exists between the parties is governed by state contract law." *Soliman*, 999 F.3d at 834; *Nicosia*, 834 F.3d at 229 ("The threshold question of whether the parties indeed agreed to arbitrate is determined by state contract law principles."). The Arbitration Agreement is silent as to what state law applies to its interpretation, although it states that the FAA applies otherwise. (Sanders Decl. Ex. C, ECF No. 10-3 at 2, 4.) The parties appear to apply New York contract principles. (*See, e.g.*, Def. Mem., ECF No. 11 at 14; Pl. Mem., ECF No. 17 at 10–11.) "'[U]nder New York choice-of-law principles, courts apply . . . the law of the jurisdiction with the most significant relationship to the dispute . . . In contract disputes, courts apply a center of gravity or grouping of contacts test to determine which jurisdiction . . . has the most significant relationship to the transaction and the parties.'" *Hu v. Barclays Cap. Inc.*, No. 24-CV-7580 (JPO), 2025 WL 1307700, at *2 (S.D.N.Y. May 6, 2025) (quoting *Eccles v. Shamrock Cap. Advisors, LLC*, 42 N.Y.3d 321, 335–36 (2024)). Here, Caiceros resides in New York; his claims and SDH's request to compel their arbitration arise from his employment in New York. (Compl., ECF No. 1 ¶¶ 8, 11.) Under these circumstances, the center of gravity for the parties' dispute is New York, and the Court will apply New York law.

"'To form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound.'" *Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 722 (E.D.N.Y. 2017) (quoting *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004)). "It is 'well settled' under New York law that arbitration will not be compelled absent the parties' 'clear, explicit and unequivocal agreement to arbitrate.'" *Lopez*

9

*v. Lidl US, LLC*, No. 22-CV-4271 (ALC), 2023 WL 2674757, at *3 (S.D.N.Y. Mar. 29, 2023), *reconsideration denied*, 2024 WL 1329776 (S.D.N.Y. Mar. 28, 2024) (quoting *Manigault v. Macy's E., LLC*, 318 F. App'x 6, 7–8 (2d Cir. 2009)).

SDH satisfies its burden to establish by a preponderance of the evidence that Caiceros agreed to arbitrate his claims within the meaning of the FAA. "Courts consistently compel arbitration of employment claims pursuant to valid arbitration agreements in offer letters." *Etienne v. Barclays Bank*, No. 18-CV-5168 (ALC), 2019 WL 3325841, at *2 (S.D.N.Y. July 24, 2019) (collecting cases); *see also Jabbour v. Brillio*, LLC, No. 24-CV-2704 (PKC), 2025 WL 834431, at *3 (S.D.N.Y. Mar. 14, 2025). Caiceros accepted SDH's offer of employment when he signed the Offer Letter, which incorporates by reference the Terms Statement describing the Arbitration Agreement. (*See* Sanders Decl., Ex. B, ECF No. 10-2.) As plainly stated in the Terms Statement, the employment offer was contingent upon his acceptance of the Arbitration Agreement. (*Id*. at 3 ("Please note that we must receive your signed [Arbitration] Agreement before your first day of employment.").) Comparable notice of the contingent nature of an offer of employment, and the employee's acceptance of same, is acceptable evidence of an agreement to arbitrate. *See Lopez*, 2023 WL 2674757, at *3 (finding valid agreements to arbitrate when offer letters "clearly state that Plaintiff's employment was conditioned on her acceptance of [defendant's] arbitration agreement").

Additionally, "it is settled law in New York that an agreement to exchange continued employment for a commitment to arbitrate is enforceable." *Hu*, 2025 WL 1307700, at *3 (citing *Credit Suisse First Bos. Corp. v. Pitofsky*, 4 N.Y.3d 149, 155 (2005)). "When an individual begins employment with the understanding that the employer has an arbitration policy, there is an inference that the individual agrees to the terms of that policy." *Pettersen*

10

*v. Volcano Corp.*, No. 18-CV-3021 (PKC)(PK), 2020 WL 6323937, at *5 (E.D.N.Y. Sept. 8, 2020), *R. & R. adopted*, 2020 WL 6323122 (E.D.N.Y. Oct. 27, 2020) (citing *Manigault v. Macy's E., LLC*, 318 F. App'x 6, 8 (2d Cir. 2009)). Before Caiceros began his employment at SDH, he knew from the Offer Letter and Terms Statement that arbitration was required for any disputes with SDH, yet he began and continued working for SDH after signing the Offer Letter and acknowledging the Arbitration agreement. His actions are thus sufficient evidence of his intent to be bound by the Arbitration Agreement. *See Manigault*, 318 F. App'x at 8 ("A contract may be formed by words or by conduct that demonstrate the parties' mutual assent.").

### 2.     Plaintiff's Challenges

Caiceros offers multiple reasons why there is a material issue of fact as to whether he agreed to arbitrate his claims (*see* Pl. Mem., ECF No. 17 at 10–24), but each argument fails.[3]

Caiceros argues that SDH fails to support an agreement to arbitrate his claims with admissible evidence because the witness lacks personal knowledge. (*Id.* at 24.) The record belies this claim. SDH submits the affidavit of Rita Sanders, a Senior Human Resources Systems Administrator at Sodexo. Sanders testified that she began working at Sodexo in 1998 and has been in her current role since 2018; in this role, she has access to Sodexo's business records and those of its subsidiaries. (Sanders Decl., ECF No. 10 ¶ 2.) Based on her experience with Sodexo, she is "deeply familiar with Sodexo's policies and procedures for tracking the onboarding of employees of Sodexo and its affiliates and subsidiaries," including SDH. (*Id.* ¶ 3.) She has access to and has reviewed Sodexo's records documenting "the

---

[3] As noted below, however, Plaintiff's arguments as to the Arbitration Agreement's enforceability are for the arbitrator to decide. (*See* § III.B., *infra*.)

11

completion of all employee onboarding requirements," including records related to Caiceros, and those records are "made in the ordinary course of Sodexo's business at or near the time" of the events to which they relate. (*Id.* ¶ 4; *see also id*. Exs. B–E, ECF Nos. 10-2 through 10-5.) "As required to lay a proper foundation for the admission of a business record under [Federal Rule of Evidence] 803(6), [Sanders] has demonstrated that [she] is a qualified witness, that the statements are based on personal knowledge or [her] review of [Sodexo's] business records, and that the documents were kept in the ordinary course of business." *Vitrano v. N.A.R., Inc.*, No. 18-CV-6754 (KAM)(RLM), 2020 WL 1493620, at *8 (E.D.N.Y. Mar. 27, 2020) (citing *United States v. Komasa*, 767 F.3d 151, 156 (2d Cir. 2014)). This evidence is sufficient to sustain SDH's burden in this summary judgment posture. *See Parker v. Mandarich Law Grp., LLP*, No. 19-CV-6313, 2021 WL 2351177, at *4–5 (E.D.N.Y. June 9, 2021).

Caiceros also argues that the Offer Letter expressly disclaims any classification as a contract. (*See* Pl. Mem., ECF No. 17 at 13–14.) The relevant language of the Offer Letter states, "Nothing in this letter, the included Terms of Employment Statement, or statements made by a Sodexo representative are intended to create a contract. This letter contains all the commitments that have been extended to you and you should not rely on any verbal promises or other representations that are not included." (Sanders Decl. Ex. B, ECF No. 10-2 at 2.) "However, this language does not indicate that the offers letters have *no* contractual value, but merely explains that [Caiceros] would be an employee 'at-will.'" *Lopez*, 2023 WL 2674757, at *3. Moreover, at least one court has rejected similar arguments regarding disclaimer language in employment policy or onboarding documents. *See Akhter v. Compass Grp. USA, Inc.*, No. 22-CV-2194 (JMF), 2022 WL 4638635, at *1 (S.D.N.Y. Sept. 30, 2022).

12

In sum, Caiceros fails to show a genuine issue of material fact as to whether he entered into the Arbitration Agreement. Accordingly, the Court finds that SDH satisfies its burden of showing that an agreement to arbitrate exists.

### C. Scope of the Arbitration Agreement

After finding that an arbitration agreement exists, the court must evaluate its scope, or whether the Arbitration Agreement applies to Caiceros's claims against SDH in this action. *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 243 (2020) (citing *Daly*, 939 F.3d at 421). However, "when . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Mobile Real Est., LLC*, 460 F. Supp. 3d at 473 n.9 (quoting *Contec Corp. v. Remote Sol., Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005)). Importantly, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019).[4]

The Arbitration Agreement states that any arbitration will be held "under the auspices of the professional arbitration firm JAMS . . . in accordance with the JAMS Employment Arbitration Rules & Procedures (and no other rules), which are currently available at http://www.jamsadr.com/rules-employment-arbitration." (Sanders Decl. Ex. C, ECF No. 10-3 at 4.)[5] Under the relevant JAMS rules, the arbitrator decides questions of arbitrability. *See*

---

[4] The parties do not address this jurisprudence at all, instead arguing that the Arbitration Agreement is broad enough in scope to encompass Caiceros's claims (Def. Mem., ECF No. 11 at 17–18) or that a mandatory arbitration provision for FLSA and NYLL is impermissible. (Pl. Mem., ECF No. 17 at 20–23).

[5] The website was last visited on September 3, 2025.

13

JAMS Employment Arb. Rs. & Procs. R. 11(b) (effective June 1, 2021) ("Jurisdictional and arbitrability disputes . . . shall be submitted to and ruled on by the Arbitrator.")  "'Such a delegation provision 'is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce' and is 'valid under § 2 save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Saizhang Guan*, 236 F. Supp. 3d at 727 (quoting *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010)).  "Accordingly, the parties' incorporation of . . . JAMS rules into the Arbitration Agreement and those rules' language on arbitrability serve as 'clear and unmistakable evidence of the parties' intent' to delegate arbitrability issues to the arbitrator." *Alderson v. DeVere USA, Inc.*, No 18-CV-5081 (JFK), 2018 WL 3756451, at *2 (S.D.N.Y. July 24, 2018) (quoting *Contec*, 398 F.3d at 208).  For example, Caiceros asserts that SDH is not a party to the Arbitration Agreement because it is not mentioned in the Arbitration Agreement, that the Arbitration Agreement is unconscionable because he did not have an opportunity to confer with an attorney before signing, and that the FLSA, NYLL, and New York Civil Practice Law and Rules preclude arbitration of his retaliation claim—all of which implicate whether the Arbitration Agreement is enforceable (but not whether an agreement to arbitrate exists).  (Pl. Mem., ECF No. 17 at 16–18, 20–24.)  "Insofar as [JAMS Rule 7(b)] provide[s] that the arbitrator has the power to determine the scope and validity of the arbitration provision, and the parties have incorporated this rule into the [Arbitration] Agreement, Plaintiff's arguments regarding the enforceability of the arbitration provision here falls within the province of the arbitrator." *McCrae*, 2024 WL 4692047, at *9 (discussing similarly worded AAA arbitration rule); *see also Emilio v. Sprint Spectrum L.P.*, 508 F. App'x 3, 5–6 (2d Cir. 2013) (relying on prior version of JAMS Rule

14

11(b) to conclude that the parties had committed gateway questions of arbitrability to the arbitrator).

The Court therefore respectfully recommends that these issues, as well as whether Caiceros's FLSA and NYLL claims fall within the scope of the Arbitration Agreement, should be decided by the arbitrator.

### D. Stay of this Action

SDH also moves to stay this action. (Mot., ECF No. 9; Def. Mem., ECF No. 11 at 19.) When a court determines that arbitration is appropriate, the court "*shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3 (emphasis added); *see Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024) ("When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration.") In this case, a stay is required because an agreement to arbitrate exists and SDH requests the stay pending arbitration. *Katz v. Cellco P'ship*, 794 F.3d 341, 345 n.6 (2d Cir. 2015). Accordingly, the Court respectfully recommends a stay of this action pending completion of arbitration proceedings.

### IV. **CONCLUSION**

Based on the foregoing, the Court respectfully recommends that Defendant SDH Services West, LLC's motion to compel arbitration and stay proceedings at ECF No. 9 should be **granted** and this action should be stayed in its entirety. The Court further recommends

that, if the parties proceed to arbitration, then they shall submit a joint status report within 14 days of the resolution of the arbitration.

A copy of this Report and Recommendation is being served on all parties via ECF. Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Any requests for an extension of time to file objections shall be directed to Judge DeArcy Hall. If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED**

Brooklyn, New York
September 3, 2025

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge